# City National Bank of Auburn *v.* Isenberg, Appellant.

*Bills of lading—Passing of title—Carriers—Banks and banking.*

Where an owner of automobiles, a corporation in Indiana, on April 15, 1911, bills a car of such automobiles to itself at Philadelphia with notice to a partnership doing business in that city and then makes a draft on such partnership and sells the draft to a bank in Indiana with the bill of lading indorsed and turned over to the bank, and the latter credits the proceeds to a special account of the shipper from which account the shipper has a full right to check, the title to the goods passes to the bank, and it may maintain its right of ownership to them as against the partnership in Philadelphia, which has refused to accept the draft, and has seized the goods under a foreign attachment on a claim against the shipper. Such a case comes within the terms of the Act of September 24, 1866 (P. L. 1867), 1363, then in force.

Argued Oct. 23, 1914. Appeal, No. 186, Oct. T., 1914, by defendants, from judgment of C. P. No. 2, Phila. Co., June T., 1911, No. 70, on verdict for plaintiff in case of City National Bank of Auburn v. David Isenberg et al., trading as Roman Automobile Company. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Foreign attachment to determine the title to ownership. of certain automobiles.  Before SULZBERGER, P. J.

At the trial it appeared that the defendants, trading as the Roman Automobile Company, early in 1911 entered into an agreement with the W. H. McIntyre Company to purchase twenty automobiles.  Twelve of these cars were shipped in four separate shipments, and accepted by the Roman Automobile Company and the drafts therefor were paid.  On April 15, 1911, three additional automobiles were shipped by the McIntyre Company to its own order at Philadelphia with notice to the Roman Automobile Company.  At the same time it made a draft on the Roman Automobile Company, and sold the draft to the City National Bank of Auburn, Indiana, with the bill of lading indorsed and turned over to the bank.  The latter credited the proceeds of the draft to the special account of W. H. McIntyre Company, from which account the company had full right to check.  When the automobiles reached Philadelphia they were seized by foreign attachment proceedings by the Roman Automobile Company, whereupon the bank intervened, and an issue was framed.

On the trial of the issue the trial judge directed a verdict for the plaintiff.

Verdict and judgment for plaintiff.  Defendant appealed.

*Error assigned* was in directing a verdict for plaintiff.

*Henry N. Wessel,* with him *Alfred Aarons,* for appellants.—The issue did not depend upon the weakness of the title of the Roman company, nor the rights of the McIntrye company, but upon proof by the bank that it was the absolute owner, not pledgee, of the property in issue: Miller v. Jackson, 34 Pa. Superior Ct. 31; Union Safe Dep. Bank v. Strauch, 20 Pa. Superior Ct. 196; Bissell v. Steel, 67 Pa. 443; Knowles v. Jacobs, 4 Pa. Superior Ct. 268; Jenkyns ᵥv. Brown, 14 Q. B. 495;

Sewell v. Burdick, 10 A. C. 74; Lieper's App., 108 Pa. 377; Bradlee v. Whitney, 108 Pa. 362.

The title of the bank must be determined as the facts existed on April 15, 1911, the date when it took the draft for collection: Marine Nat. Bank of Buffalo v. Baringer, 46 Pa. Superior Ct. 510; Keeler Co. v. Schott, 1 Pa. Superior Ct. 458; Jenkins v. Fowler, 24 Pa. 308.

*Samuel W. Cooper*, for appellee, cited: Sloan v. Johnson, 20 Pa. Superior Ct. 643; Hieskell v. Bank, 89 Pa. 155; Richardson v. Bank, 167 Pa. 513.

OPINION BY HEAD, J., February 24, 1915:

In its controlling facts this case is scarcely, if at all, distinguishable from First National Bank, Chicago, v. Hartzell, 55 Pa. Superior Ct. 56. There is no warrant in the evidence for any conclusion other than that the plaintiff bank was a holder for value of the bill of lading with the accompanying draft. A theory to the contrary is evolved by way of argument from the single fact that the proceeds of the draft, when purchased by the bank, were credited in a special account of the drawer. It was shown that by reason of some contract or arrangement, altogether foreign to this transaction, the drawer deposited proceeds of drafts drawn against automobiles, manufactured or assembled by him, in this special account because he was expected to devote such money to special purposes rather than to the payment of current debts or expenses. But it is the undisputed evidence that the drawer could and did check against that account. There was nothing then upon which any court could have permitted a jury to find that the plaintiff was not a holder in good faith of the bill of lading. What situation then resulted? The Act of June 9, 1911, P. L. 838, known as the "Uniform Bills of Lading Act," did not go into effect until January 1, 1912. As a consequence our older statute of September 24, 1866, P. L. (1867), page 1363, was in force when the rights of

these parties attached.  It provided, inter alia, "And any person to whom the said receipt, or bill of lading, may be so transferred, shall be deemed and taken to be the owner of the goods therein specified, so as give security and validity to any lien created on the same, &c."  The contract of purchase was, of course, executory.  It would not be contended that by the mere execution of that instrument the complete title to twenty particular automobiles vested in these defendants.  The contract provided they were to pay spot cash for any and all cars shipped, a sight draft to be attached to the bill of lading.  Prima facie then, when the three automobiles mentioned in this controversy were shipped by the McIntyre Company, in a car consigned to the shipper at Philadelphia, with a draft on these defendants accompanying the bill of lading, it would be difficult for them to argue that the delivery was complete and unconditional at Indianapolis.  But it is needless to discuss that feature of the case, for as the learned court below logically remarked, the present defendants are committed to the proposition that when the automobiles reached Philadelphia they still remained the property of McIntyre & Co.

We are unable to see how, under the operation of the statute, either McIntyre & Co. or these defendants could maintain any claim of ownership in this property at Philadelphia to the exclusion of the paramount right of the holder of the bill of lading.  Under the statute that holder is declared to be the owner for the purpose of securing and working out the amount due to him. We find nothing in the record that would warrant us in interfering with the judgment that has been entered. The assignments of error are overruled.

Judgment affirmed.